NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| FLORA RODRIGUEZ, o/b/o E.R., | : | |
| | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | Civil Action No: 11-cv-2098(DMC) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon the appeal of Flora Rodriguez ("Plaintiff," alternatively, "Appellant"), who filed an application for Social Security insurance benefits on behalf of her minor son, E.R. ("Claimant"), from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claims for a period of disability and disability insurance benefits under Title II and the application for supplemental security income under Title XVI of the Social Security Act ("Act") and upon two decisions of ALJ Marilyn Faulkner and ALJ Dennis O'Leary after a First and Second Remand.  This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

      After reviewing the submissions of both parties, for the following reasons, the final decision entered by the Administrative Law Judge ("ALJ") Krappa is **affirmed**.

## I.  BACKGROUND

### A.  PROCEDURAL HISTORY

On February 23, 1999, Plaintiff filed an application for Social Security Insurance benefits on behalf of her minor son, E.R. (Tr. 37-39).  Plaintiff alleged that E.R. was disabled due to asthma and skin condition since November 1, 1995.  (Tr. 225, 228).  The application was denied both initially and upon reconsideration.  (See Tr. 225).  At Plaintiff's request, she appeared with counsel before ALJ Marilyn Faulkner on Feb 5, 2001.  (Tr. 9).  The ALJ issued a decision dated August 2, 2001, finding that E.R. was not disabled.  Id.  The Appeals Counsel denied review on March 4, 2002, rendering the ALJ's decision as the final decision of the Commissioner.  (Tr. 282).  Plaintiff appealed to the District Court.  (Tr. 170-71).  District Court Judge William Walls remanded the case back to the Commissioner pursuant to a Consent Order dated March 5, 2004.  (Tr. 173).  On September 3, 2004, the Appeals Council vacated ALJ Faulkner's August 2001 decision, remanded the case pursuant to sentence four of §205(g) of the Social Security Act for further proceedings, and directed the ALJ to consolidate E.R's first application for benefits filed in December 23, 1999, and second application filed on August 13, 2004.  (Tr. 177-178).

On May 26, 2005, Plaintiff and E.R. appeared with counsel and testified in a hearing before ALJ Dennis O'Leary.  (Tr. 221-68).  On September 20, 2005, ALJ O'Leary issued a decision, finding E.R. not disabled.  (Tr. 160-69).  The Appeals Council denied review on August 31, 2006, rendering ALJ O'Leary's decision as the final decision of the Commissioner.  (Tr. 152-54).  Plaintiff appealed to the District Court, which remanded the case back to the Commissioner.  (See Tr. 297).  On September 3, 2004, the Appeals Council vacated ALJ O'Leary's decision and remanded the case to an ALJ for further proceedings.  (See Tr. 177-78).

On May 26, 2005, Plaintiff and E.R. appeared with counsel and testified in a second hearing

before ALJ O'Leary. (Tr. 223–67). Dr. Martin Fechner testified about E.R.'s asthma. (Tr. 260-67). ALJ O'Leary issued a decision finding E.R. not disabled. (Tr. 160-69). On August 21, 2006, the Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 152-54). Plaintiff appealed to the District Court. (See Tr. 298). Following proceedings in the District Court, the Appeals Council again vacated and remanded the decision for further proceedings. (See Tr. 298).

On November 29, 2007, a third hearing, this time before ALJ Donna Krappa, was held at which Plaintiff and E.R. appeared with counsel and testified. (Tr. 755-850). An impartial medical expert Dr. Martin Fechner and impartial psychological expert Dr. Louis Lauro also testified. Id. ALJ Krappa held an additional hearing on February 5, 2008, for further examination of Dr. Lauro. (Tr. 852-84). On May 7, 2009, ALJ Krappa issued a decision finding E.R. not to be disabled. (Tr. 294-327). The Appeals Council remanded the case back to the ALJ on October 28, 2009, directing the ALJ to evaluate the statements by his mother, to evaluate E.R.'s subjective complaints and to prepare a full list of exhibits. (Tr. 328-31).

On January 13, 2010, ALJ Krappa held an additional hearing at which Plaintiff, E.R., and E.R.'s older sister appeared with counsel and testified. (Tr. 890-965). On April 10, 2012, ALJ Krappa issued a decision finding E.R. not disabled. (Tr. 279-88). On February 7, 2011, the Appeals Council denied review, rendering this decision the final decision of the Commissioner. (Tr. 269-71). On April 13, 2011, Appellant filed a complaint with this Court.

### B. FACTUAL HISTORY

#### 1.    Claimant's Medical History and Evidence

Plaintiff's disability claims since November 23, 1999 have been related to asthma, atopic dermatitis, Attention Deficit Hyperactivity Disorder ("ADHD"), opposition defiant disorder, and

parent child relational problems.  (See Tr. 299).  Plaintiff's medical history is summarized below.

### i.      Medical Evidence Prior to the Alleged Onset Date

E.R. was two years old at the time of the alleged disability onset date. (Tr. 228).  Plaintiff

filed an application for benefits when E.R. was five years old.  Id.  While E.R. was suffering from

asthma attacks, Plaintiff brought E.R. to the emergency room on several occasions.  (Tr. 102-119).

### ii.     Medical Evidence from the Alleged Onset Date: November 23, 1999

Plaintiff lists the onset date on Claimant's application as November 23, 1999.  Claimant's

medical records indicate a history of ADHD and oppositional defiant disorder.

The record includes psychiatric evaluations dated October 3, 2003 (Tr. 211-16), August 10,

2006 (Tr. 408-10) and April 24, 2008 (Tr. 420-23), and a medical report dated February 29, 2000

(Tr. 84-86).  The record contains an in-patient progress record from Trinitas Hospital dated October

15, 2008 to October 31, 2008 (Tr. 434-55), and outpatient treatment notes from Trinitas Hospital

from 2006 to 2007 (Tr. 401-12).  The record additionally contains school records, including a student

progress report dated October 12, 2007 (Tr. 413), and an eighth grade report card (Tr. 754).

A medical report from February 29, 2000 notes Claimant was found to have asthma and

eczema.  (Tr. 85).  Dr. Cincotta recommended that E.R. continue to take medications regularly to

reduce the severity of flare-ups associated with stress.  Id.  Dr. Cincotta also observed that E.R. was

cooperative, friendly, attends school and has average grades.  (Tr. 84).

### iii.    Psychiatric Evaluations of Claimant by Drs. Padron, Robertson & Perdomo

The record consists of three psychiatric evaluations of Claimant: one by Dr. Padron, one by

Dr. Robertson, and one by Dr. Perdomo.  ALJ Krappa gives lesser  weight to the treating physicians,

citing a lack of consistency between the doctor's evaluation and evidence and Claimant's testimony.

(Tr. 316).

Dr. Padron's psychiatric review technique form consists of an evaluation of home composition, family history, medical history and diagnosis on admission. (Tr. 211-15). The form states that E.R. is of at least average intelligence, has a family history of hyperactivity, anxiety, depression and criminal behavior. (Tr. 213). Dr. Padron's report prescribed Concerta to assist with hyperactivity and problems with attention and group therapy for both Plaintiff and E.R. (Tr. 216).

Dr. Padron reported E.R. as having ADHD. Plaintiff initially brought E.R. for an evaluation out of frustration feeling as though she could not discipline him appropriately. Upon admission, Dr. Padron found E.R. to be fidgety. (Tr. 214). Dr. Padron's mental examination notes that no psychotic symptoms were observed.

Dr. Robertson's consultative examination notes E.R. was not presently in psychiatric care nor taking medication. (Tr. 407). Plaintiff stopped bringing E.R. to outpatient therapy and stopped giving E.R. Zyprexa because his behavior was improving. Id. Dr. Robertson notes that Plaintiff brought E.R. to the emergency room in July 2006 for ongoing disrespectful behavior. Id.

Dr. Robertson's mental status examination describes E.R. as cooperative and calm, with good comprehension, speech, and response time. (Tr. 408). E.R.'s mood is euthymic, but he has a low frustration tolerance, especially when he does not get his way. Id. Dr. Robertson does not mention that E.R. has any problems focusing or paying attention. Rather, Dr. Robertson reports that E.R. is becoming increasingly oppositional, which is "complicated by . . . watching and playing aggressive wrestling games." (Tr. 409). Overall, Dr. Robertson gives E.R. a fair prognosis, and suggests outpatient psychiatric treatment and restarting Zyprexa. Id. Dr. Robertson lists his diagnostic impression as such: "asthma," "oppositional defiant disorder," "rul[ing] out impulse control disorder," and "rul[ing] out ADHD." Id. Dr. Robertson recommended that E.R. restart Zyprexa for

his behavior, as well as attend anger management outpatient therapy.  Id.  Dr. Robertson further recommended Plaintiff monitor E.R.'s exposure to violent games on the computer and television programs.

The New Jersey Division of Disability referred E.R. to Dr. Perdomo in order for Dr. Perdomo to perform an intellectual assessment of E.R. for the purposes of disability.  Dr. Perdomo noted that Plaintiff indicated that E.R. has two personalities adding, "he can be calm and happy, and then becomes aggressive and beat[s] his mother and siblings.  He fights a lot at school." (Tr. 420).  Dr. Perdomo also noted that Plaintiff indicated that E.R.'s father was schizophrenic and that mother has a history of depression. (Tr. 421).  Dr. Perdomo also consulted police records which demonstrated E.R.'s history of behavioral problems at home.

Dr. Perdomo's mental status examination of E.R. revealed that E.R.'s thought process was organized and focused, further that E.R. spoke coherently and relevantly.  Id.  Dr. Perdomo observed that E.R. was immature, in "a world of his own," and cooperative despite his distracted state.  Id. In his interpretation of IQ test data, Dr. Perdomo indicated E.R. as mentally deficient, nothing however, his social/cultural background may be a factor. (Tr. 422).  Dr. Perdomo indicated that E.R.'s problems are not based on ADHD, but rather on bipolar or schizophrenia disorders. (Tr. 423).

Dr. Perdomo recommended that E.R. continue treatment with Zyprexa and outpatient therapy. He also indicates that the test data is a minimal estimation of his present functioning, but concludes that E.R. functions below his grade level and has a significant learning disability.  Id.

### iv.    Disability Reports from Plaintiff and Field Office

The record contains several disability reports.  The first disability report, dated March 8, 2000, appears at page eighty-seven of the Transcript.  On this report, Plaintiff, on behalf of E.R. lists his impairments as "asthma." (Tr. 87).  The onset date is November 23, 1999.  However, the

impairment was determined to be "non-severe." Id. A second disability report, dated September 1, 2000, indicates that E.R. has asthma, but that it "is mild, intermittent, and well controlled." (Tr. 100). The report found that E.R.'s asthma was not severe. Id.

School records from 2000 show that E.R. was in kindergarten, and achieved a first grade readiness skill in reading, mathematics, language/writing. (Tr. 202-6). Further, the records show that E.R. was recommended to be placed in ESL classes, but not special education classes. (Tr. 207). A teacher noted that he had difficulty paying attention, and was hyperactive despite being placed in a small groups. (Tr. 208-9). However, E.R. was able to focus on assignments when he was isolated in a box. (Tr. 209). The teacher recommended that he be evaluated to determine the cause of his hyperactivity. Id. School records from when E.R. was in fifth grade demonstrate that he was aggressive at home and at school, and refused to take his medication. (Tr. 195). A school progress report dated October 2007 indicated E.R. was in the seventh grade, cooperative, participatory and well prepared his humanities language, world languages, health and general band classes. (Tr. 413). However, in science and math, he was in danger of failing. (Tr. 413).

School records from Marquis de Lafayette from 2008 to 2009 showed E.R. was in the eighth grade in regular education classes. (Tr. 754). School records from Alexander Hamilton Preparatory Academy from 2009 to 2012 showed E.R. in the ninth grade and in regular education. (Tr. 744-50). He was regularly tardy to school and amassed 109 absences within the first half of the school year. (Tr. 744).

### v.    Testimony

#### (a)    Plaintiff's Testimony

Plaintiff  testified at the ALJ hearing in September 2005 before ALJ O'Leary. E.R was in

fifth grade, attending regular education classes.  (Tr. 244).  Plaintiff reported behavioral changes in E.R. that caused him to be disrespectful and abusive towards her.  (Tr. 247-49).  At the November 2007 hearing, Plaintiff indicated that E.R. was still in regular education.  (Tr. 762, 803).  Plaintiff complained that E.R. does not respect her, and does not seek her assistance with homework.  (Tr. 766).  Plaintiff testified that due to E.R.'s behavior, such as pulling her hair and biting his sister, she had to call the police.  (Tr. 767).  Plaintiff also indicated that the school officials told her than E.R. does not need special education because he knows how to do his assignments, even if he does lose focus and fails to complete them.  (Tr. 769).  Plaintiff also indicated that the school notified her that E.R. does not complete homework at all.  Id.

Plaintiff  testified at the ALJ hearing in January 2010 before ALJ Krappa, that E.R was hospitalized in October of 2008.  (Tr. 908).  Plaintiff testified that E.R. still goes to a psychiatrist on a monthly basis.  (Tr. 909).  Plaintiff testified that she and her daughter are currently on disability. (Tr. 914).  Plaintiff testified she suffers from anxiety and depression.  (Tr. 916).  Plaintiff testified she has to report to court regarding E.R.'s absences from school.  (Tr. 920).  Plaintiff testified that E.R. has punched holes in the wall of his bedroom.  (Tr. 923).  Plaintiff indicates that she does not receive complaints from other parents when E.R. goes to their homes to play.  (Tr. 782-3.)

### (b)    Dr. Fechner's Testimony

Dr. Fechner testified at the ALJ hearing in September of 2005 before ALJ O'Leary.  Dr. Fechner testified that E.R. was in the Emergency Room three times in 2000 for asthma.  (Tr. 260). Dr. Fechner testified that E.R. has not been back to the Emergency Room since then.  Id.  Dr. Fechner testified that E.R. missed thirty-seven days of school, but he did not know how many days were attributable to asthma.  (Tr. 261).  Dr. Fechner stated he could determine the severity of the

asthma by noting how many courses of Prednisone have been given.  Id. Dr. Fechner testified that E.R. was last given two courses of Prednisone in 2001.  Id.  This information led Dr. Fechner to conclude that E.R's symptoms were getting better.  Id.  Dr. Fechner testified in his opinion the only area that would be "marked" would have been "interacting and relating to others."  (Tr. 262).

Dr. Fechner testified at the ALJ hearing in November of 2007 before ALJ Krappa that asthma is the only medical condition E.R. has.  (Tr. 828).  Dr. Fechner testified that it does not seem like the asthma was severe enough to meet or equal the Listing.  (Tr. 828-29).

### (c)      Dr. Lauro's Testimony

Dr. Lauro testified at the ALJ hearing in November of 2007, before ALJ Krappa, defining E.R.'s psychological condition as a "parent-child problem."  (Tr. 830).  Dr. Lauro stated that E.R. might have ADHD, but that possible ADHD was not interfering with his academic performance and behavioral issues.  Id.  Furthermore, Dr. Lauro testified that E.R.'s behavioral problems are selective, not universal.  Id.  Dr. Lauro testified that E.R.'s behavior and diagnosis does not meet or exceed the Listings.  (Tr. 831).  Dr. Lauro also testified that of the six domains, the only domain that would be classified as marked would be "interacting and relating to others."  (Tr. 832).  Dr. Lauro testified that E.R. is not psychotic, nor does he have any major impairments in work, school, family relations, judgment, thinking, or mood.  (Tr. 840).  Dr. Lauro testified that E.R.'s GAF score of forty was incorrect, and his true score was actually higher.  (Tr. 837-38).

Dr. Lauro's testimony was postponed then continued on February 5, 2008 before ALJ Krappa.  Dr. Lauro testified that the GAF score of forty included Plaintiff's reports on E.R.'s behavior, as compared to E.R.'s behavior when not with Plaintiff.  (Tr. 860).  Dr. Lauro again testified that the combination of the parent/child relational problem and ADHD do not meet or equal

the Listings.   (Tr. 874).   Dr. Lauro testified that E.R. has moderate inattention, moderate compulsiveness, and moderate hyperactivity as compared to "marked."  (Tr. 877-78).

**(d)   E.R.'s Testimony**

E.R. testified at the ALJ hearing in September of 2005 before ALJ O'Leary.  E.R. testified that he was in fifth grade. (Tr. 258).  E.R. testified that he gets along well with friends at school, but fights sometimes with his sister at home.  (Tr. 259).  E.R. testified that he sometimes has asthma attacks when he plays at school.  Id.

At the November 2007 hearing, E.R. testified before ALJ Krappa that he was in seventh grade and in regular education.  (Tr. 803).  E.R. believed that he was doing "borderline" in math and science, but was doing well in history, gym, band and Spanish.  (Tr. 804-5).  E.R. testified that he does his homework regularly and avoids getting into verbal altercations with his mother and siblings. (Tr. 808-9).  E.R. claimed he had never been suspended or disciplined at school.  (Tr. 813).  E.R. stated that asthma related issues are often due to cold air, and he takes Advair and Singulair to manage the condition.  (Tr. 815).  E.R. testified that he has no problems playing sports due to the asthma.  (Tr. 816).  E.R. testified he goes to Trinitas Hospital Emergency Room four times a year due to uncontrollable asthma.  (Tr. 820).  E.R. also goes to Trinitas once a month for psychiatric counseling which often involve fifteen to twenty-five minute sessions.  (Tr. 820-21).  E.R. states that his behavior is bad at home because he cannot control himself.  (Tr. 821-22).  E.R. stated there are teachers at school that he likes, and further that he has never been angry with them at school.  (Tr. 824-25).

E.R. testified at the ALJ hearing in January 2010 before ALJ Krappa that he was in ninth grade.  (Tr. 945).  E.R. testified that he went to Trinitas Hospital once a month.  (Tr. 946).  E.R.

testified that he punched approximately three holes in his wall when he was angry with Plaintiff.  (Tr. 949-50).  E.R. testified that he received mostly F's on his last report card, and he might repeat the ninth grade for a second time.  (Tr. 951).  E.R. testified that he does not do his homework.  (Tr. 954).  E.R. testified he is jealous that his sister has her own room, while he shares a room with his brother.  (Tr. 956).  E.R. testified he would like to be a mechanic in the future.  (Tr. 962).

#### (e)      Melody Ramirez's Testimony

Ms. Ramirez testified at the ALJ hearing in January 2010 before ALJ Krappa that she has suffered from seizure disorders since she was seven or eight years old.  (Tr. 926).  Ms. Rodriguez testified that E.R. is not doing well in school, and has hit a girl with an eraser.  (Tr. 928).  Ms. Ramirez also testified that E.R. is not in any special education.  (Tr. 929).  Ms. Ramirez testified that E.R. has hit Ms. Ramirez and Plaintiff.  (Tr. 931-32).  Ms. Ramirez testified that E.R. was verbally abusive towards her after she told E.R. to leave her room.  (Tr. 937).

#### 2.      ALJ's findings

ALJ Faulkner made seven findings regarding the E.R.'s application for a period of disability and disability insurance benefits: 1) the Claimant was born on July 28, 1994, and was six; 2) the Claimant never performed any substantial gainful activity; 3) the Claimant has the following medically determinable impairment:  "asthma," that is "severe" within the meaning of 20 C.F.R. §416.924(c); 4) the Claimant's impairments are not of a severity which medically meets or equals the severity of any Impairment listed in Part B of Appendix 1 to Subpart P, 20 C.F.R. Part 404 ("Listing of Impairments"), and neither are the Claimant's Impairments functionally equivalent in severity to any listed Impairment; 5) the Claimant does not have "marked" limitations in two functional domains or "extreme" limitations in one functional domain; 6) subjective complaints are

11

considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision; and 7) for the period from December 23, 1999, through the date of this decision the Claimant is not under a disability as defined in the Social Security Act and derivative regulations.

### i.  ALJ's finding on First Remand

ALJ O'Leary made six findings regarding the Claimant's application for a period of disability and disability insurance benefits: 1) the child was born on July 28, 1994 and has never engaged in substantial gainful activity since the alleged onset date (20 C.F.R § 416.924(b)); 2) the child has "severe" impairments involving asthma and behavioral problems (20 C.F.R. § 416.924(c)); 3) the child's asthma and behavioral problems do not meet or medically equal the severity of any Impairment listed in Part B, or Part A, of Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations, (20 C.F.R. §§ 416.924(d)(1), 416.925 and 416.926); 4) the child does not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the Listings (20 C.F.R. §§ 416.924(d)(2) and 416.926a); 5) the child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision; and, 6) the child has not been under a "disability," at any time from the alleged onset date through the date of this decision (20 C.F.R. § 416.906).

### ii.  ALJ's finding on Second Remand

ALJ Krappa made six findings regarding the Claimant's application for a period of disability and disability insurance benefits: 1) the Claimant was born on July 28, 1994, and therefore, he was

a child on December 23, 1999, the date the application was filed and was, at the time, an adolescent (20 C.F.R. 416.926a(g)(2)); 2) the Claimant had not engaged in substantial gainful activity at any time relevant to the decision (20 C.F.R. 416.924(b) and 416.972); 3) the Claimant has the following severe impairments: oppositional defiant disorder (ruling out conduct disorder), parent child relational problems, ADHD, chronic dermatitis, atopic dermatitis, and asthma (20 C.F.R. 416.924(c)); 4) the Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926); 5) the Claimant does not have an impairment or combination of impairments that functionally equals the Listings (20 C.F.R. 416.924(d) and 416.926a); and 6) the Claimant has not been disabled, as defined in the Social Security Act, since December 23,1999, the date the application was filed (20 C.F.R. 416.924(a)).

II.        **STANDARD OF REVIEW**

The SSA provides for judicial review of "any final decision of the Commissioner" in a disability proceeding.  42 U.S.C. § 405(g).  A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 1995). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted).  Not all evidence is considered "substantial."  For instance,

[a] single piece of evidence will not satisfy the substantiality test if the

13

> [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence — particularly certain types of evidence (e.g. that offered by treating physicians) — or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). The "substantial evidence standard is a deferential standard of review." Jones, 364 F.3d at 503. As such, it does not matter if this Court "acting de novo might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. &

14

Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record [her] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The ALJ's findings should be "as comprehensive and as analytical as feasible, and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so a reviewing court may know the basis of those determinations." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).  Such a requirement ensures that reviewing courts are able to exercise their duty of review effectively and adequately.  Id.  While the ALJ must consider pertinent medical and non-medical evidence, and "explain conciliations and rejections," the ALJ is not required to discuss "every tidbit of evidence included in the record." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000).  If the ALJ fails to properly indicate why evidence was rejected, the Court is not permitted to determine whether the evidence was discredited or simply ignored.  See Burnett, 220 F.3d at 121 (citations omitted).

## III.   APPLICABLE LAW

A Claimant's eligibility for Social Security benefits is governed by 42 U.S.C. § 1382.  A child under the age of eighteen is considered "disabled" under the SSA if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 1382c(a)(3)(C)(I).  The SSA has established a three-step process or determining whether a child is disabled.  20 C.F.R. § 416.924(a)-(d).

At step one, the Commissioner must determine whether the child is currently engaged in substantial gainful activity. 20 C.F.R § 416.924(b). A person engages in substantial gainful activity when she participates in significant physical or mental activities for pay or profit. 20 C.F.R.§ 416.972 (a)-(b). Generally, school attendance, taking care of oneself, and pursuing hobbies are not considered to be substantial gainful activity. 20 C.F.R. § 416.972(c). If a child engages in substantial gainful activity, he or she is not disabled, and the analysis proceeds to the second step. 20 C.F.R. § 416.924(a).

The Commissioner, under step two, must determine whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R.§ 416.920(c). An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. If a child does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. If the Commissioner finds a severe impairment or combination of impairments, the analysis proceeds to step three. 20 C.F.R. § 416.924(a).

The analysis, under step three, requires a determination as to whether the child Claimant's impairment meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). Under the Regulations, an impairment "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). An impairment "functionally equals" a listed impairment if the child has either "marked limitations" in two of the following domains or "extreme limitations" in one of the following domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and

16

manipulating objects; (v) caring for themself; and (vi) health and physical well-being.  20 C.F.R. §§ 416.926a(b)(1), 416.926a(d).  In assessing functional limitations, the SSA considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance.  20 C.F.R. § 416.926a(a)(1)-(3).  If the child's disability meets, medically equals, or functionally equals a listed impairment, he or she will be considered disabled for the purposes of the SSA.  20 C.F.R. § 416.924(d)(1).

IV.   **ANALYSIS**

On appeal, Plaintiff challenges the ALJ's determination that E.R.'s impairments were neither medically nor functionally equivalent to the listings.  (Pl.'s Br. 25).  Because of this error, Plaintiff contends that the ALJ's determination should be reversed as a matter of law, and the Court should award benefits.  Id. at 28.  Plaintiff asserts that the ALJ improperly rejected E.R.'s IQ scores obtained from an evaluation performed by Dr. Perdomo in April 2008, as demonstrative of medical equivalence to the Listings.  Id. at 22.  Plaintiff further argues that the ALJ failed to give weight to the treating physicians' opinions.  He also claims that the ALJ failed to properly consider E.R.'s ADHD as controlling evidence that he has a marked limitation in the "Attending and Completing Tasks" and "Acquiring and Using Information" domains.  Id. at 27.

The Commissioner contends that the ALJ's decision should be affirmed because substantial evidence proves that E.R. had less than a marked limitation in "Attending and Completing Tasks" and less than marked limitation in "Acquiring and Using Information."  (Def.'s Br. 19-20).  Commissioner maintains that the ruling should be affirmed because E.R. does not meet the requirements for disability.

In this case, at step one, the ALJ found that Plaintiff did not engage in substantial gainful

activity since December 23, 1999, the date of application. (Op. 14, May 7, 2009).  Next, at step two,

the ALJ found that E.R had severe impairments of oppositional defiant disorder (ruling out conduct

disorder); parent child relational problems; ADHD; chronic dermatitis; atopic dermatitis; and

asthma.  Id.  At step three, however, the ALJ found E.R. not disabled because he does not have an

impairment or combination of impairments that meets, medically equals or functionally equals any

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

### A. The ALJ's Alleged Failure to Give Proper Weight to Treating Physicians' Evaluations

While the ALJ considered the opinions of the treating physicians, Plaintiff contends that the

ALJ failed to give proper weight to the treating physician's opinions.  (Pl. Br. 25-26). Plaintiff

additionally maintains that the treating physicians present uncontradicted evidence about E.R.'s

impairments.  The general rule of affording more weight to a claimant's treating physician only

applies when the treating source's medical opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  However, under the regulations, if any

evidence, including medical opinion(s), is inconsistent, the ALJ will weigh the evidence based on

the totality of the evidence in the record.  20 C.F.R. § 404.1527(c)(2).  "If the ALJ rejects probative

evidence from a treating physician, he is required to explain why." Corea v. Comm'r Soc. Sec., 381

F. Supp. 2d. 386, 395 (3d Cir. 2004).

In this case, several doctors at Trinitas Hospital treated E.R. for his impairments.  Dr. Padron

treated E.R. for ADHD from 2003 to 2005.  (Tr. 211-16).  Dr. Robertson examined E.R. on August

10, 2006.  (Tr. 407-10). Dr. Robertson noted E.R. had a GAF score of forty and that he had stopped

treatment at the clinic and stopped taking his medication because the mother felt that E.R. was doing better.  Id.  After meeting with Dr. Robertson, E.R. began to regularly attend therapy at  Trinitas Hospital, which consisted of "real[ly] short" monthly visits, where E.R. spoke with a doctor and obtained prescriptions for Zyprexa.  (Tr. 820-21).  E.R. also received treatment through the Trinitas Hospital Day Treatment program on October 15, 2008 through October 31, 2008 for out of control behavior.  (Tr. 434-40).

The ALJ considered the medical records from Trinitas Hospital, yet did not afford great weight to the named doctors who evaluated E.R.  The ALJ was concerned with Plaintiff's influence on examining physicians.  In one instance, the ALJ noted that Plaintiff brought E.R. to the hospital for out of control behavior at home and provided information about E.R. to doctors during the intake. (Op. 20).  The ALJ points out that "during the intake, the claimant repeatedly stated that his mother was lying."  Id.

The ALJ suggested that Plaintiff's financial incentive could tend to cause exaggeration of the severity of E.R.'s impairments and that incentive should be considered when assessing Plaintiff's credibility.   (Op. 6, Apr. 23, 2010).  Plaintiff currently supports herself and three children on her own disability payments, and Plaintiff would prospectively manage E.R.'s disability payments.  Id. The ALJ recognized that if E.R. was found disabled, Plaintiff would receive large disability payments on behalf of E.R.  Id.

While the ALJ acknowledged that E.R. has behavioral problems at home, such behavioral problems are not apparent in school records or in reported incidents from parents of E.R.'s friends. (Op. 21, May 7, 2009).  The ALJ found that the out-of-control behavior was limited to E.R.'s relationship with his family and to the familial home.  Id.  The ALJ's decision not to grant lesser

19

weight to the Trinitas Hospital records are based on substantial evidence.

### B. Substantial Evidence Supports the ALJ's Determination the E.R.'s Impairment Does Not Meet, Medically Equal, or Functionally Equal the Listings

### 1.    E.R.'s Impairment Does not Meet the Listing for Mental Retardation

Plaintiff claims that the medical evidence demonstrates that E.R.'s IQ scores establish presumptive disability.  (Pl.'s Br. 22).  According to the regulations, an impairment meets the requirements for mental retardation if the claimant achieves "a valid verbal, performance, or full scale IQ of 59 or less." 20 CFR Part 404 Appx. 1. 12.05(b).  Even if a claimant meets the Listings, the ALJ reserves the right to reject the score if it is "inconsistent with the record."  Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003).  Furthermore, intelligence tests are only one factor in determining whether claimant meets the Listings of mental retardation.  20 CFR Part 404 App'x 1. The Listings indicate that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 CFR Part 404 Appx. 1 12.05.

Plaintiff's argument is without merit.  Plaintiff confuses the Listings for Mental Retardation under 112.05(c) and the Listings for ADHD, under which Plaintiff has filed an application.  An analysis under 112.05 is wholly irrelevant because the E.R.'s application alleges E.R. has a disability due to his ADHD, not mental retardation.

In fact, the ALJ took testimony from Dr. Lauro to determine the significance of the IQ and GAF scores.  (Tr. 313-15).  The ALJ adopted Dr. Lauro's view that the GAF scores do not comport with E.R.'s actual behavior.  (Op. 22).  Dr. Lauro indicated that the scores themselves do not reflect the same narrative of the evaluating physicians and were, therefore, contradictory.  (Tr. 864-65). Additionally, Dr. Lauro indicated that there was a difference between how E.R. behaved in his

mother's care versus his behavior while at school and with his friends.  (Tr. 860).

The ALJ rejected the scores because there was substantial contradictory evidence, which demonstrates that E.R. cognitively functions at an average level. (Tr. 315).  The evidence shows that E.R. attends regular education classes, and "does well in school when he applies himself." (Tr. 287). E.R. testified that he does his homework on his own initiative.  (Tr. 808-9).  The ALJ found that E.R. behaves poorly only while at home; whereas at school or with peers, he "is able to function in an age appropriate manner." (Tr. 318).  The ALJ also points to E.R. "playing video games, listening to music, and learning to play a musical instrument" as evidence that contradicts E.R.'s IQ and GAF scores. (Tr. 288).  The ALJ determined that the strength of the contradictory evidence warranted a rejection of the scores.

### C.  E.R.'s Impairment is does not meet the not functional equivalent of ADHD in the Listings

The ALJ correctly determined that E.R.'s impairment did not functionally equal the Listings. For an impairment to functionally equal the Listings, a claimant must have a "marked" limitation in two of six domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  Plaintiff contends that the ALJ erred in determining E.R. as not disabled.  (Pl.'s Br. 4).  Plaintiff argues that E.R.'s impairment of ADHD should render E.R. to have a "marked limitation" in "attending and completing tasks," or alternatively, "acquiring and using information."  Id. at 30.

The ALJ found that while E.R. has a "severe" impairments, it was "not so severe as to render the child/claimant disabled." (Op. 3).  At step three, the ALJ determined that E.R. "has less than marked limitation in attending and completing tasks" and "less than marked limitation in acquiring and using information."  Id.  Plaintiff claims that the ALJ erred because the psychological

evaluations and the ADHD diagnosis show E.R. as having a marked limitation.  (Pl.'s Br. 27).

Plaintiff's reasoning lacks merit.  The ALJ properly rejected the GAF and IQ scores because there was substantial contradictory evidence that did not comport with E.R.'s functioning at school or with his peers.  Even if the ALJ had accepted the intelligence testing results, the score is only one element used to determine whether the child has a deficit in cognitive functioning.  20 CFR Part 404, Subpart P, App'x 1.  In this case, the ALJ assessed the results of three different administrations of the psychological evaluations.  Dr. Padron's assessment of E.R. in 2003 noted that E.R. was fidgety.  (Tr. 214).  The ALJ disregarded Padron's note based on the fact that he was speaking with E.R.'s mother at the time, and that E.R. was achieving grades in the eighties or above at school.  (Op. 24).  The ALJ also discredited Dr. Robertson's 2006 assessment of E.R. because he was not on any medication nor in treatment at the time, which could have contributed to the test results.  Id.  The ALJ initially rendered Dr. Perdomo's 2008 assessment of E.R. to be accurate because E.R. had resumed his medication regimen and treatment at the Outpatient clinic at Trinitas Hospital.  Id.  The ALJ determined that Dr. Perdomo's assessment concluded that E.R.'s thought process was organized and focused, and his low scores could be attributed to "be[ing] distracted and in a world of his own," or alternatively not putting forth his best effort.  Id.  However, the ALJ afforded Dr. Perdomo's opinion less weight because he suggested E.R to have schizophrenia or bi-polar disorder based on a one-time interview.  Id.  The ALJ also indicated that Dr. Perdomo evaluated E.R. without any evidence that he consulted prior medical or treatment records.  (Op. 21).  Rather, he consulted Plaintiff on E.R.'s impairments.  Id.

### 1.    E.R. has a Less Than Marked Limitation in Attending and Completing Tasks

Plaintiff alleges that the ALJ erred in concluding that E.R. had less than a marked limitation

in "attending and completing tasks" because of E.R.'s ADHD.  (Pl. Br. 27).  The domain of "attending and completing tasks" determines how well a child is able to focus and maintain concentration, and how well he is able to begin and carry through activities to their completion, including the pace at which he performs activities and the ease of changing activities.  20 CFR 416.926(h).  The ALJ found that E.R. had a less than marked limitation in attending and completing tasks based on substantial evidence in the record.  (Op. 25).

The record contains substantial evidence to support the ALJ's findings. The ALJ found that E.R.'s success at school, based on his academic performance, shows that he can manage his impairment with proper treatment. (Op. 25).  Various school progress reports indicate that E.R. was able to focus in school.  (Tr. 413).  In classes that he enjoys, E.R. was generally prepared and completed his assignments.  Id.  The ALJ also points to E.R.'s eighth grade report card to show that his grades, which E.R. achieves in regular education classes, are remarkable.  (Op. 25).

**2.      E.R. has a Less Than Marked Limitation in Acquiring and Using Information**

Plaintiff also alleges that the E.R.'s impairment of ADHD should result in a marked limitation in "acquiring and using information."  In making an assessment in the acquiring and using information domain, the fact finder considers how well a child is able to acquire or learn new information and how well the child has used that information. 20 CFR 416.926a(g)(2)(iv).  The ALJ found that E.R. has a less than marked limitation in acquiring and using information.  (Op. 23).

Plaintiff's argument is similarly without merit.  While the ALJ acknowledged that E.R. has ADHD, the records of examining physicians show that he is of "at least average intelligence."  Id. The record shows that E.R.'s academic performance contradicts Plaintiff's arguments.  The record, on numerous occasions, demonstrates that when E.R. applies himself, he does well.  (See Tr. 804-5).

23

E.R.'s impairment does not meet, or medically or functionally equal a Listed Impairment. Based on the facts as contained in the record, this Court finds that ALJ Krappa's decision is supported by substantial evidence.

**V.    CONCLUSION**

Based on the foregoing, ALJ Krappa's Opinion is **affirmed**.  An appropriate Order follows this Opinion.

    s/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          April   30th  ,  2012
Original:      Clerk's Office
cc:            All Counsel of Record